■ William A. Gallina, Appellant, v Marion Gallina, Respondent.—Order of the Supreme Court, Westchester County (Vincent Gurahian, J.), entered on or about June 27, 1988, which, *inter alia,* granted plaintiff's motion for a declaration of emancipation for the parties' daughter Susanne and to be relieved of his obligation to pay defendant unallocated support and maintenance for the subject child to the extent of reducing the amount required to be paid for her by the sum of $500 per month, denied plaintiff's motion for a declaration of emancipation for the parties' daughter Allison and to be

relieved of the obligation to pay defendant unallocated support and maintenance for her and granted defendant's application for counsel fees to the extent of directing plaintiff to pay $1,250 to defendant's counsel, is unanimously reversed on the law to the extent appealed from, and plaintiff's motion for a declaration of emancipation with respect to both Susanne and Allison, retroactive to the date of each application, and to be relieved of his obligation to pay defendant unallocated support and maintenance for both Susanne and Allison is granted and defendant's application for counsel fees denied, without costs and disbursements.

The parties herein were divorced in 1983 following some 20 years of marriage. The judgment of divorce incorporated, but did not merge, a stipulation of settlement executed on November 14, 1982 after extensive negotiations at which both the husband, an attorney himself, and the wife were represented by counsel. The subject stipulation, which was drafted by defendant's lawyer, provided for the distribution of the couple's assets and for the custody and support of their three daughters, Allison, born on August 26, 1974, Susanne, born on March 26, 1970 and Lauren, born on February 2, 1968. Pursuant to the agreement, although custody of the children was to be joint, they were to reside primarily with defendant wife at the marital residence in Scarsdale, New York. Child support was to be paid by plaintiff husband in the sum of $443.33 per month plus maintenance of $1,300 for a total amount of $2,600 each month in unallocated child support and maintenance. Reduction of payments was conditioned upon the emancipation of a child or children, which was defined as follows:

### "IV. EMANCIPATION EVENT

"14. With respect to a Child, an Emancipation Event shall occur or be deemed to have occurred upon the earliest happening of the following:

"a) Reaching the age of twenty-one (21) years; or if the Child is attending college or university as a full time matriculated student at age twenty-one, then until completion of college or reaching the age of twenty-two (22) years or discontinuing as a full-time matriculated student, which ever first occurs;

"b) Marriage, even though such a marriage may be void or voidable;

"c) Death;

"d) Engaging in full-time employment upon and after the Child reaches eighteen (18) years of age.

"e) Maintaining a permanent residence away from the residence of the Mother, except and provided (i) that a residence at college or university, or any residence while participating in a work-study program under the auspices of an institution of higher learning is not to be deemed a residence away from the residence of the Mother, and hence, such a residence is not an Emancipation Event; and (ii) that partial employment, full-time summer and vacation employment and a work-study program under the auspices of an institution of higher learning shall not be deemed an Emancipation Event; such an Emancipation Event shall be deemed terminated and nullified upon cessation by the Child for any good or valid reason from such full-time employment * * * and the period, if any, from such a termination until the soonest to occur of any other Emancipation Event shall, for all purposes under this Stipulation be deemed a period prior to the occurrence of an Emancipation Event.

"f) Permanent residence with the Father as determined by a court of competent jurisdiction."

In August of 1987, Allison, then aged 13, began residing with plaintiff on a full-time basis. He asserts that his daughter's decision to live with him was undertaken with the consultation of her psychologist and after a meeting with defendant and the psychologist and that he now pays for Allison's entire support, including her tuition at a private school. Susanne moved to plaintiff's home in December of 1987. In that regard, some three months after Allison began to live with him, he sought a court order under section 14 (f) of the agreement to have her declared emancipated, retroactive to the date of application, based upon her permanent residence with him. When Susanne changed her residence, plaintiff served a supplemental motion to confirm her permanent residence with him as well. Defendant, however, urges that section 14 (f) may not be invoked since one or both of her daughters still makes occasional visits to her and that this provision may only be applied if a child no longer spends any time with her. In addition, as evidence that section 14 (f) is inapposite insofar as Allison is concerned, she points to section 18 (c) of the stipulation, which states that: "For purposes of this Agreement the youngest child of the parties, Allison, shall be deemed to make her principal place of residence with

the Husband. The provisions of Article IV, sub-paragraph 'f)' to the contrary notwithstanding, such fact shall not constitute an emancipation event as to Allison." Defendant has also cross-moved for sole custody of Allison and for an award of counsel fees.

The record herein, which includes minutes of the hearing conducted by the Supreme Court in connection with this matter, leaves no doubt that Allison and Susanne are now permanent residents of plaintiff's household and, as such, are emancipated according to the meaning of article IV, § 14 (f) of the agreement. Where, as is the instant situation, the language of the agreement is clear and unambiguous on its face, the court may not disregard the intentions of the parties and alter the contractual terms (*Howard v Howard,* 120 AD2d 567). As the Court of Appeals observed in *Matter of Boden v Boden* (42 NY2d 210, 212-213): "Where, as here, the parties have included child support provisions in their separation agreement, the court should consider these provisions as between the parties and the stipulated allocation of financial responsibility should not be freely disregarded. It is to be assumed that the parties anticipated the future needs of the child and adequately provided for them. It is also to be presumed that in the negotiation of the terms of the agreement the parties arrived at what they felt was a fair and equitable division of the financial burden to be assumed in the rearing of the child. Included in these obligations is the financial responsibility of providing the child with adequate and reasonable educational opportunities. Absent a showing of an unanticipated and unreasonable change in circumstances, the support provisions of the agreement should not be disturbed".

Since article IV of the agreement clearly authorizes the reduction of unallocated maintenance and child support payments upon the emancipation of one or more children, and by moving to their father's home, Allison and Susanne are now to be deemed emancipated under the subject stipulation, the court was required to grant plaintiff's motion for a declaration of emancipation as to each of the two girls and for the concomittant downward modification of his financial obligations as specified in the pertinent clauses of the agreement. Contrary to the Supreme Court's interpretation, the question of custody is entirely separate from the issue of primary residence in that the stipulation contemplated that custody would be joint and that primary residence would be with the

mother. Similarly, permanent residence was wrongly equated with custody, and an examination of the stipulation demonstrates that the word "custody" was utilized in the agreement purely in a legal, rather than a physical, sense. Moreover, there is nothing in the stipulation to support defendant's position that emancipation is precluded so long as a child or children continue to spend some time with her. The words "permanent residence" are clear and unambiguous and simply do not mean the same as "spending time with". It is also uncontroverted that plaintiff is now bearing the entire support of Allison and Susanne, and he is entitled, pursuant to the specifications of the stipulation, to be relieved, retroactive to the date of each application, of the obligation of having to furnish defendant with child support for which he is already paying in full.

Defendant's argument regarding section 18 (c) is equally unavailing. This clause was evidently inserted for tax purposes only. At the time that section 18 (c) was formulated, Allison was living with her mother and was "deemed" to reside with her father so that plaintiff could obtain a head of household deduction (defendant, who had two children actually living with her, could still take her own head of household deduction). Indeed, the language of section 18 (c) that Allison shall be deemed to reside with plaintiff "[t]he provisions of Article IV, sub-paragraph 'f)' to the contrary notwithstanding, such fact shall not constitute an emancipation event as to Allison" makes it clear that the words "such fact" refer to the preceding sentence and that section 18 (c) and section 14 (f) are being distinguished. Thus, in reviewing the agreement as a whole, it is apparent that the intention of the parties relative to custody, residence and tax consequences was that these items were to be treated separately. Finally, the Supreme Court improperly directed that plaintiff pay certain of defendant's counsel fees since there was no showing whatever of her inability to pay, and, indeed, "the record indicates that both parties have sufficient assets and means to pay their respective expenses" (Matter of Whittaker v Feldman, 113 AD2d 809, 812). The case cited by defendant, DeCabrera v Cabrera-Rosete (70 NY2d 879), in favor of the court's award of counsel fees herein is inapplicable to the present matter, which does not involve a divorce action. We have considered defendant's remaining arguments and find them to be without merit. Concur—Murphy, P. J., Carro, Milonas, Asch and Kassal, JJ.